## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **IRENE CAPPALLI,** *individually and on behalf of all others similarly situated,* | |
| *Plaintiff,* | Case Number: |
| v. | |
| **DANONE NORTH AMERICA PUBLIC BENEFIT CORPORATION, d/b/a DANONE NORTH AMERICA,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Irene Cappalli** ("Plaintiff" or "Ms. Cappalli"), on behalf of herself and all similarly situated individuals, by and through her attorneys, and complains of the Defendants, **Danone North America Public Benefit Corporation**, doing business as **Danone North America** ("**Defendant**" or "**Danone**"), stating as follows:

## DESCRIPTION OF THE CASE

1.     Defendant labels, markets, and sells a food product, known as a "Vanilla" almondmilk, under the brand name of "Silk" (hereafter also referred to as the "Product").

2.     The Product's front label (hereafter also referred to as "Principal Display Panel") prominently and conspicuously displays the word "VANILLA."

3.      Vanilla is identified as the Product's characterizing flavor (hereafter also referred to as "Characterizing Vanilla Flavor" or "Characterizing Flavor").

4.      Despite Defendant's characterization of the Product as a "vanilla" almondmilk, the Product does not contain vanilla as an ingredient that independently creates the Product's vanilla taste.

5.      Instead, the Product derives its Characterizing Flavor from an ingredient known as "Natural Flavor," as identified in small print on the Product's ingredient list, located on the label on the backside of the Product.

6.      Defendant's actions lead reasonable consumers to expect that the Product would contain vanilla in the form of a non-exclusive ingredient, responsible for creating the Product's Characterizing Vanilla Flavor, not as a "natural flavor" ingredient.

7.      Defendant's failure to identify on the Product's front label, by including the words "natural flavor," that the Product does not contain vanilla as one of its characterizing, but not exclusive, ingredients is deceptive.

8.      Defendant's failure to include vanilla as an ingredient in the Product as one of the Product's characterizing, but not exclusive, ingredients or to display the words "natural flavor" on the Product's Front Label is deceptive and misleads reasonable consumers in their purchasing decisions.

9.    Plaintiff and the Class purchased Defendant's deceptively-labeled Product on the reasonable but mistaken belief that the Product contained vanilla as one of its characterizing, but not exclusive, ingredients, which contributes to its Characterizing Flavor.

10.    Defendant's Product is not compliant with state and federal food labeling laws and regulations (hereafter also referred to as "Food Labeling Laws").

11.    Defendant's Product is not compliant with the requirements of the Federal flavoring regulation (hereafter also referred to as the "Flavoring Regulation").

12.    Defendant's conduct violates Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et. seq.* ("FDUTPA") and is otherwise grounds for restitution based on unjust enrichment.

13.    Plaintiff seeks to remedy Defendant's deceptive labeling, marketing, and selling of its Product.

14.    Plaintiff seeks damages, injunctive relief, and a jury trial.

## JURISDICTION AND VENUE

15.    This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Defendant is a Delaware public benefit corporation with its principal place of business in White Plains, New York, and Plaintiff is a resident of the State of Florida. The amount in controversy

exceeds $5,000,000 for Plaintiff and the Class, exclusive of interest and costs, reaped by Defendant from their transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein and by the injunctive and equitable relief sought.

16.     Jurisdiction is proper according to the Class Action Fairness Act of 2005 (hereafter also referred to as "CAFA").  28 U.S.C. § 1332(d)(2).

17.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## THE PARTIES

### Plaintiff

18.     **Ms. Cappalli** is a natural person residing in Rotonda West, Florida.

19.     Ms. Cappalli is a *Consumer* as defined by FDUTPA, Florida Statutes § 501.203(7).

### Danone

20.     **Danone** is a Delaware public benefit corporation with a primary business address of 1 Maple Avenue, White Plains, NY 10605.

21.     Danone is one of at least 20 U.S.-based subsidiaries of Danone S.A., a French corporation based in Paris, France.

22.     Danone is registered to conduct business in the state of Florida, where

its Registered Agent is Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, FL 33408.

## FACTUAL ALLEGATIONS

23.    On or about January 11, 2021, Ms. Cappalli purchased the Product from a Walmart Supercenter located at 2931 S. McCall Road, Englewood, Florida.

24.    The front label of the Product purchased by Ms. Cappalli prominently and conspicuously displayed the word "VANILLA" (hereafter referred to as the "Label Wording"). See Plaintiff's Exhibit "A" for an image of the Product's Principal Display Panel.

25.    The Product purchased by Ms. Cappalli was characterized as a "Vanilla" almondmilk.

26.    The Principal Display Panel notably omitted any qualification of the Label Wording, such as by use of the word "flavor" or "flavored" (hereafter also referred to as "Label Omissions").

27.    Qualifications such as "flavor" or "flavored" would indicate to reasonable consumers that the Product did not contain enough vanilla as an ingredient to independently characterize and impart the Product's Characterizing Vanilla Flavor.

28.    The Label Wording and Label Omissions (hereafter Label Wording and Label Omissions collectively referred to as "Deceptive Labeling") lead

reasonable consumers to commonly expect that the Product would, in fact, contain vanilla, not as an exclusive ingredient, but as one of its characterizing ingredients, contributing to the Product's Characterizing Flavor.

29.     Indeed, Ms. Cappalli believed that the Defendant utilized vanilla as one of the Product's characterizing ingredients, contributing to the Product's Characterizing Flavor, when she purchased the Product.

30.     Despite Ms. Cappalli's expectations that the Product would contain vanilla, the Product did not, in fact, contain vanilla as an ingredient that independently characterized the Product's Characterizing Vanilla Flavor.

31.     Instead, the Product contained Natural Flavor as the ingredient that imparts the Product's Characterizing Flavor.  See Plaintiff's Exhibit "B" for an image of the Product's ingredient list.

32.     Any food product that is expected to contain its characterizing ingredient, such as vanilla, but does not, and instead is flavored, must, according to the Food Labeling Laws, and specifically, the Flavoring Regulation, disclose that fact to consumers on the Product's front label by including the word "flavor" or "flavored."

33.     The deceptively-labeled Product misled Plaintiff and the Class to purchase the Product at a "price premium" based upon the reasonable, but the

mistaken, belief that the Product contained vanilla as one of the ingredients contributing to the Product's Characterizing Vanilla Flavor.

34.     Defendant's Deceptive Labeling misleads reasonable consumers into believing they are purchasing a food product with qualities it does not have, and thus violates Florida Statutes § 501.204(1).

35.     Defendant sold the Product to Walmart, or otherwise provided the Product to Walmart, with the intent that Walmart sell the Product to a consumer, such as Ms. Cappalli.

36.     Defendant thus engaged in "Trade or Commerce" as defined by Florida Statutes § 501.203(8).

37.     Defendant knows that the Product contains Natural Flavor and not vanilla as an ingredient that independently creates the Product's vanilla taste.

38.     Defendant knows that reasonable consumers rely on material representations and omissions on a food product's front label.

39.     Indeed, Defendant intends for consumers to rely upon the Product's Principal Display Panel.

40.     Properly indicating that the Product is flavored is not only a legal requirement but a material term upon which reasonable consumers rely.

41.     Defendant's deception flows from the fact that the Product does not disclose, on the Product's front label, by the display of the word flavor or flavored,

that the Product is a flavored product that does not contain vanilla as one of its characterizing, but not exclusive, ingredients, which contributes to its Characterizing Flavor.

### Plaintiff Suffered Damages as an Economic Injury and Paid a Price Premium for the Product's Purchase

42.    Plaintiff sought to buy a lawfully labeled, marketed, and sold product.

43.    Plaintiff saw and relied on Defendant's misleading labeling of its Product.

44.    Plaintiff believed that the Product purchased contained vanilla as one of its characterizing, but not exclusive, ingredients, which contributes to the Product's Characterizing Flavor.

45.    Plaintiff believed that the Product was lawfully marketed and sold.

46.    In reliance on the claims made by Defendant regarding the qualities of its Product, Plaintiff paid a price premium.

47.    As a result of Plaintiff's reliance on Defendant's deceptive actions, Plaintiff received a Product lacking the promised ingredient that she reasonably believed it contained.

48.    Plaintiff received a Product that was unlawfully marketed and sold.

49.    Plaintiff paid the retail price offered for the Product's purchase  at the time of purchase.

50.     Plaintiff lost money and thereby suffered an injury, as she would not have purchased the Product, or would have been willing to purchase the Product if it were offered at a lower price. a

51.     Defendant knows that including a characterizing ingredient is material to a reasonable consumer's purchasing decision. As a result, Plaintiff altered her purchasing decision to her detriment due to Defendant's deceptive labeling of its Product and suffered damages.

52.     By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

53.     Plaintiff, however, would be willing to purchase the product again in the future should she be able to rely on Defendant's marketing as truthful and nondeceptive.

**<u>Reasonable Consumers Consider a Food Product's Front Label's</u>**
**<u>Words and Images Material to their Purchasing Decisions</u>**

54.     A food product's front label matters to reasonable consumers purchasing choices.

55.     A food product's front label is the most significant part of a food product's label that affects reasonable consumers purchasing decisions as

consumers attempt to quickly make informed purchasing decisions.[1]

56.    An FDA survey found that sixty-seven percent (67%) of respondents used the front label to make purchasing decisions.[2]

57.    Other studies have also found that reasonable consumers rely upon front labels.  One study indicated that reasonable consumers consider that front label representation has a "strong impact on their food purchases."[3]

### Consumers Consider a Food's Characterizing Ingredients as Very Important to the Food Product's Value

58.    "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient…. is very important to the value of the product and thus to the consuming public."[4]

59.    The FDA Commissioner, in January 1973, published a proposal to revise the requirements contained in § 1.12 of the FDCA (now § 101.22) concerning the labeling of flavor contained in food products.

---

[1] *See, e.g.* Mark Becker, et al., Front of Pack Labels Enhance Attention to Nutrition Information in Novel and Commercial Brands, Food Policy Volume 56, October 2015, Pages 76-86.  Available at https://doi.org/10.1016/j.foodpol.2015.08.001 ("Our results provide clear evidence that FOP labels are more effective at attracting attention than the traditional NFP [Nutrition Facts Panel], and that this advantage is attributable to both the location…and to its design elements").

[2] Hawley, K. L., Roberto, C. A., Bragg, M. A., Liu, P. J., Schwartz, M. B., & Brownell, K. D. (2013). The Science On Front-Of-Package Food Labels. Public Health Nutrition, 16(3), 430–439. Available at http://doi.org/10.1017/S1368980012000754.

[3] Healthy Through Presence or Absence, Nature or Science? A Framework for Understanding Front-of-Package Food Claims, Journal of Public Policy & Marketing 2019, Vol. 38(2) 172-191 available at https://journals.sagepub.com/doi/pdf/10.1177/0743915618824332.

[4] Federal Register Vol. 38, No. 231, December 3, 1973.

60.     The FDA solicited public commentary, subsequently summarized that commentary, and published responses to that commentary.

61.     The FDA Commissioner made clear that the purpose of these regulations was to provide labeling uniformity among marketplace participants to prevent consumer confusion and deception.  *See* Federal Register Vol. 38, No. 231, December 3, 1973.

62.     The FDA Commissioner indicated that "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation" when a food product displays a flavor representation on its front label. 38 Fed. Reg. at 33286. "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient is not at all subtle, and is very important to the value of the product and thus to the consuming public." *Id.* at 33285.

63.     In 1993, the FDA considered and proposed amendments to specific FDCA regulations.  Once again, the FDA reconfirmed the function and importance of 21 C.F.R. § 101.22 and indicated that 21 C.F.R. § 101.22 is "intended to ensure that the label communicates essential information to consumers. These provisions are intended to provide manufacturers with flexibility for labeling products while providing consumers with the information they need to determine the nature of the product. The agency concludes that both kinds of label information discussed

here are essential to adequately describe the nature of the product. One type of information informs the consumer when flavoring substances have been added to the product. The other type describes other aspects of the basic nature of the product." 58 FR 2897, *2919. Ultimately, "….a consumer who wants the food because of its particular…. flavor is entitled to examine a label that reveals facts material in light of the representations made…." 58 Fed. Reg. 2897 *2898.

64.    In making food purchasing decisions, reasonable consumers rely on the words and images on a product's front label to inform them about its flavor and ingredients.

65.    The presence of real ingredients in food products, such as vanilla, has a material bearing on consumers' purchasing decisions.

66.    When reasonable consumers purchase a food product labeled as containing a particular ingredient, they reasonably believe it contains the particular food ingredient.

67.    When reasonable consumers purchase a food product that does not contain its characterizing ingredient, the food product is considered misbranded because it leads reasonable consumers to believe that the food product contains the ingredient when it does not.

68.    Correctly indicating that a food product is flavored is not only a legal requirement but a material term on which a reasonable consumer would rely.

69.     Moreover, a comparison of Defendant's Product to marketplace competitors, whose labels comply with the law, further evidences that Defendant's Product is misbranded.

## A Food Product's Ingredients that Contribute to a Food Product's Flavor is a Material Consideration to Reasonable Consumers' Purchasing Decisions

70.     Reasonable consumers consider it important to know what ingredients are in food products to inform their purchasing decisions.[5]

71.     A report from the Food Marketing Institute in 2018 found that 93% of consumers find it significant for food manufacturers "to provide detailed information about what is in food and how it's made."[6]

## Public Policy Concerns for Food Labeling Issues

72.     The legal basis for Plaintiff's claims has been a pillar of American jurisprudence for nearly a century. *See, United States v. Hoxsey Cancer Clinic*, 198 F. 2d 273, 281 (5th Cir. 1952), cert denied, 344 U.S. 928 (A food is misbranded if it appears that any one representation is false or misleading); *Libby, McNeill & Libby v. United States*, 148 F. 2d 71 (2d Cir. 1945) (A food product may be subject to condemnation even though it is not deleterious); *United States v. An Article of Food*,

---

[5] Top Trends Driving Change In The Food Industry, Forbes, February 16, 2019, available at https://www.forbes.com/sites/juliabolayanju/2019/02/16/top-trendsdriving-change-in-the-food-industry/?sh=302c9e636063.

[6] The State of Transparency - 2016 vs 2018, Label Insight, September 18, 2018, available at https://blog.labelinsight.com/the-state-of-transparency-2016-vs-2018.

377 F. Supp. 746, 748 n.4 (E. D. N. Y. 1974) ("The statute ... condemn[s] every statement, design, and device which may mislead or deceive," *citing United States v. 95 Barrels Cider Vinegar*, 265 U.S. 438, 442-443 (1924)).

73.     Food labeling claims, particularly misbranding claims, have been an essential concern of public policy, well-settled Federal Law, and the United States Courts for nearly a century. Federal Law "condemns every statement, design, and device which may mislead or deceive." *United States v. 95 Barrels Cider Vinegar*, 265 U.S. 438, 442-443 (1924). The lack of informative food labeling was of great concern to the White House Conference of Food Nutrition and Health. The FDA commissioner proposed that disclosing ingredients is material and necessary for consumers to choose between two competing products. *See* 37 F.R. 12327. The objective was to provide consumers with information on food labels to make reasoned and informed shopping decisions. *American Frozen Food Institute v. Mathews*, 413 F. Supp 548, 550-551 (1976).

### Plaintiff Seeks Damages for Each Time Plaintiff and a Class Member Purchased the Product

74.     Because of Defendant's conduct, Plaintiff has suffered monetary damages by purchasing the   Product, which she otherwise would not have purchased, or otherwise would have been willing to purchase the Product if it were offered at a lower price.

75.     Plaintiff is therefore entitled to damages under FDUTPA, Fla. Stat. § 501.211.

76.     Plaintiff also seeks injunctive and declaratory relief based upon Defendant's conduct asserted in this Complaint. Defendant's labeling of its Product is misleading to consumers, and injunctive relief is necessary to ensure the cessation of this practice.  Even if Defendant elects to cure the labeling violations alleged in this Complaint, they are not presently enjoined from re-engaging in the deceptive conduct alleged herein.  Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Defendant correctly labels its Product and to prevent Defendant from making the same misleading claims in the future.

### Federal and State, Laws and Regulations Relating to Food Labeling
### Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq.

77.     The federal "Food, Drug, and Cosmetic Act," codified at 21 U.S.C. § 301 *et. seq.*, (hereafter also referred to as "FDCA"), is a federal statute that comprehensively, but not exclusively, regulates the sale of food products to the consuming public.

78.     The FDCA deems food "misbranded" if its labeling is "false or misleading in any particular."  21 U.S.C. § 343(a)(1).

79.     The FDCA defines "food" as "articles used for food or drink for man…" 21 U.S.C. § 321(f).

80.    Almondmilk products are used by man as a drink, and are thus considered "food" according to the FDCA.

81.    The Defendant failed to include vanilla as an ingredient in the Product as one of the Product's characterizing, but not exclusive, ingredients, and failed to display the words "natural flavor" on the Product's Front Label.

82.    The Defendant thus misbranded the Product under the FDCA.

83.    Florida has expressly adopted the federal food labeling requirements. *See* Fla. Stat. § 500.01, *et. seq.* (the Florida Food Safety Act, hereinafter referred to as the "FFSA")[7].

84.    The FFSA likewise deems food misbranded if its labeling is false or misleading in any particular. Fla. Stat. § 500.11(1)(a) (2021).

85.    The FFSA likewise defines "food" as "Articles used for food or drink for human consumption." Fla. Stat. § 500.03(1)(n)(1).

86.    The Product is a drink for human consumption and thus meets the FFSA's definition of "food."

87.    The Defendant thus misbranded the Product pursuant to the FFSA, as well as the FDCA.

---

[7] The FFSA has a stated intent to, "Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act." Fla. Stat. § 500.02(2) (2021).

**Federal Food and Drug Administration's Food Labeling Regulations**

88.     The FDCA gives the federal Food and Drug Administration (hereafter also known as the "FDA") the responsibility to ensure that foods are correctly labeled.  21 U.S.C. § 393(b)(2)(A).

89.     The FDA oversees food labeling in the United States through a detailed and comprehensive regulatory umbrella that includes the FDCA's federal statutes and the FDA's federal regulations.

90.     According to the FDA's authority from the FDCA, the FDA has promulgated comprehensive regulations to implement the FDCA concerning food labeling requirements (hereafter also referred to as "FDA Regulations") 21 C.F.R. § 101.1, *et seq.*

91.     21 C.F.R. § 101.22 contains the federal regulations that apply to food labeling.

92.     21 C.F.R. § 101.22(i) contains the specific regulation that applies when a food label makes a representation of a "primary recognizable flavor(s), by word, vignette, e.g., the depiction of a fruit, or other means."

93.     21 C.F.R. § 101.22(i)(1)(i) specifically provides:

> (i)     If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor

shall be considered the characterizing flavor and shall be declared in the following way:

(1)(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

94.    The Defendant's failure to identify on the Product's front label, by including the words "natural flavor," that the Product does not contain vanilla as one of its characterizing, but not exclusive, ingredients, therefore violated 21 C.F.R. § 101.22(i)(1)(i).

## **Ingredient Versus Flavor**

95.    Defendant's product is characterized as a "Vanilla" almondmilk flavored by "Natural Flavors" (emphasis added) and does not contain Vanilla as an ingredient.

96.    Natural Flavors do not consist of "vanilla," as a reasonable consumer would understand.

97.    21 C.F.R. § 101.22(a)(3) defines natural flavors as "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents

derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."

98.    A natural vanilla flavor would thus be oils or essences extracted from the vanilla plant's bean pod seeds.

99.    However, because those isolated compounds may not taste like vanilla, the Defendant would have combined those extractions with any other extractions from other plants and animals to create a flavoring substance that tastes like vanilla.

100.    Therefore, Defendant must disclose that the Product is "flavored" on the Product's front label by law.  Defendant has failed to make such a disclosure and therefore is not in compliance with the law.

**Plaintiff is not Attempting to Enforce the FDCA or its Implementing FDA Food Labeling Regulations**

101.    Florida, via the FFSA, has independently and separately enacted state food labeling laws and regulations identical to the FDCA laws and the FDA regulations relating to food labeling.

102.    Plaintiff does not allege causes of action under the FDCA and FDA Regulations.

103.    Plaintiff relies on the FDCA and the FDA Regulations only to the extent that the FDCA and its FDA implementing regulations have been independently and separately enacted as state food labeling laws and regulations and provide a basis of liability under FDUTPA.

104.    Plaintiff alleges that Defendant's conduct is not compliant with the FDCA and its implementation of FDA regulations.

105.    Plaintiff does not allege that Defendant's noncompliance with the FDCA and its implementing regulations provide a private right of action against Defendant. However, Plaintiff alleges that because Defendant's conduct is not in compliance with the FDCA and its implementing regulations, Plaintiff has a private cause of action against Defendant for violating FDUTPA.

### The FDCA and its Implementing FDA Food Labeling Regulations do not Preempt Plaintiff's FDUTPA Claims

106.    Federal law does not preempt Plaintiff's state law claims because Florida law mirrors federal law. Therefore, Federal and State Food Labeling Laws both identically prohibit misbranded foods. *See Reynolds v. Wal-Mart Stores, Inc.,* No. 4:14cv381-MW/CAS (N.D. Fla. Apr. 23, 2015).

107.    Since federal and state food labeling laws and regulations identically prohibit misbranded food products, federal food labeling laws and regulations do not preempt claims under FDTUPA.

## Competitor Products

108.    Stop & Shop Supermarket sells a vanilla almondmilk which displays the word "Vanilla" almondmilk on its front label, along with the words "Naturally Flavored With Other Natural Flavors." See Plaintiff's Exhibit "C" for an image of the Stop & Shop label.

109.    Stop & Shop Supermarket's vanilla almondmilk likewise displays the words "Natural Vanilla Flavor With Other Natural Flavors" on its ingredient list. *Id.*

110.    This vanilla almondmilk is a product similar to the Product that displays similar words "Natural Vanilla Flavor With Other Natural Flavors" on its ingredient list. Therefore, it is flavored with natural flavors.

111.    However, unlike Defendant's Product, Stop & Shop Supermarket's product indicates that it is flavored on its front label. Therefore, Stop & Shop's Supermarket's product is not misbranded.

112.    The competitor's product supports the fact that a reasonable consumer would commonly expect that a product that contains the word "vanilla" on its front label would, in fact, contain vanilla, and not "Natural Flavors" as the ingredient that provides for the Product's Characterizing Flavor.

## CLASS ACTION ALLEGATIONS

113.    Plaintiff brings this action on behalf of herself and on behalf of all other individual Florida consumers who purchased Defendant's Product in the last four years.

114.    Plaintiff brings this class action lawsuit pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). Defendant and its employees, principals, affiliated entities, legal representatives, successors, and assigns are excluded from the Class.

115.    Upon information and belief, thousands of Class members are geographically dispersed throughout Florida.  Therefore, individual joinder of all members of the Class would be impracticable.

116.    Common questions of law or fact exist for all Class members.  These questions predominate over the questions affecting only individual class members.   These common legal or factual questions include: (1) whether Defendant's labeling of its Product is likely to deceive class members; (2) whether Defendant's representations and labeling amount to a deceptive and unfair practice in violation of Fla. Stat. § 501.204; and (3) the appropriate measure of damages and restitution.

117.    Plaintiff's claims are typical of the Class's claims. Plaintiff was a consumer who purchased Defendant's Product in Florida characterized by a

specific ingredient yet did not contain that ingredient.  Instead, it was flavored – a fact not disclosed on the Product's front label. Therefore, Plaintiff is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

118.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the Class members' interests she seeks to represent. Plaintiff has retained counsel competent and experienced in conducting complex class action litigation.    Plaintiff and her counsel will adequately protect the interests of the Class.

119.    A class action is superior to other available means for this dispute's fair and efficient adjudication.  The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct.  Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.

120.    Moreover, even if Class members could afford individual actions, it would still not be preferable to class wide litigation.  Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management difficulties and provides the benefits

of single adjudication, economies of scale, and comprehensive supervision by a single court.

121.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate preliminary and final equitable relief for the Class.

<u>COUNT I</u>
<u>VIOLATION OF FLA. STAT. § 501.204</u>

122.    Plaintiff adopts and incorporates Paragraphs 1 – 121 as if fully stated herein.

123.    The Product is a tangible good, with value.

124.    The Defendant advertised, solicited, provided, offered, and/or distributed the Product in Florida.

125.    The Defendant thus engaged in "trade or commerce" within the state of Florida, as defined in Fla. Stat. § 501.203(8)., or distributing of the Product, whether by sale, rental, or otherwise.

126.    Fla. Stat. § 501.204(1) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

127.    The Defendant has mislabeled and misbranded the Product in violation of various state and federal statutes and regulations, including Fla. Stat. § 500.11(1)(a) (providing that food shall be misbranded when "its labeling is false

or misleading in any particular"), Fla. Stat. § 500.04 (barring the manufacture, sale or delivery of any misbranded food), 21 U.S.C. § 343 and 21 CFR § 101.22.

128.    Such mislabeling and misbranding constitute unfair and deceptive conduct in violation of Fla. Stat. § 501.204(1).

129.    The Defendant's violations of Fla. Stat. § 501.204(1) were willful and knowing.

130.    As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Class were injured and suffered damages and are entitled to actual damages, attorneys' fees, and costs.

131.    The injuries suffered by Plaintiff and the Class include, but are not limited to, paying for Defendant's Product, paying a premium price for Defendant's falsely advertised Product, and the unlawful profits Defendant earned from the sales of this falsely advertised Product.

132.    Accordingly, on behalf of herself and all others similarly situated, Plaintiff seeks restitution from the Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

133.    Plaintiff and the Class Members are also entitled to injunctive relief in the form of an order directing Defendant to cease their false and misleading

labeling and advertising and retrieve existing false and misleading advertising and promotional materials and publish corrective advertising.

## COUNT II
## UNJUST ENRICHMENT

134.    Plaintiff adopts and incorporates Paragraphs 1 – 121 as if fully stated herein.

135.    Plaintiff asserts this claim on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

136.    Plaintiff and the Class conferred a benefit to the Defendant in the form of monies paid to the Defendant when purchasing the Product, which Defendant had mislabeled and misbranded.

137.    The Defendant knew or should have known of the benefit.

138.    It would be inequitable and unjust for the Defendant to retain the profits, benefits, compensation, consideration, and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling the mislabeled and misbranded Product.

139.    Accordingly, on behalf of herself and all others similarly situated, Plaintiff seeks restitution from the Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a jury trial on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff requests that the Court enter judgment on behalf of

herself and the Class for:

A.    Certification for this matter to proceed as a class action;

B.    An award of actual damages as pled herein;

C.    Injunctive relief as pled herein;

D.    An award of pre-judgment and post-judgment interest as provided
by law;

E.    An award of attorneys' fees, litigation expenses, and costs of suit;

F.    Such other relief as the Court deems just and proper.

Respectfully submitted on **November 7, 2022**, by:

> **SERAPH LEGAL, P. A.**
>
> */s/ Bryan J. Geiger*
> Bryan J. Geiger, Esq.
> Florida Bar No.: 119168
> BGeiger@SeraphLegal.com
> Thomas M. Bonan, Esq.
> Florida Bar No.: 118103
> TBonan@SeraphLegal.com
> 1614 N. 19th St.
> Tampa, FL 33605
> Tel: 813-567-1230
> Attorneys for Plaintiff

## ATTACHED EXHIBIT LIST

A    Image of the Product's Principal Display Panel
B    Image of the Product's ingredient list
C    Image of Stop & Shop Supermarket's vanilla almondmilk label